UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ANTONIO MADDOX,

Plaintiff,

v.                                                        Case No. 24-cv-1376-pp

DR. KARL J. BERTRAM, *et al.*,

Defendants.

---

**ORDER DENYING AS MOOT PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), SCREENING COMPLAINT UNDER 28 U.S.C. §1915A AND DISMISSING CASE WITHOUT PREJUDICE**

---

Plaintiff Antonio Maddox, who is incarcerated at Fox Lake Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his rights under federal and state law. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

I.      **Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

1

On October 31, 2024, the court ordered the plaintiff to pay an initial partial filing fee of $65.88. Dkt. No. 5. The court received that fee on November 19, 2024. Since then, the plaintiff has paid the balance of the filing fee. Dkt. No. 9. Because the plaintiff has paid the full filing fee, the court will deny as moot his motion for leave to proceed without prepaying the filing fee.

## II.     Screening the Complaint

### A.     Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v.

<u>Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. <u>D.S. v. E. Porter Cnty. Sch. Corp.</u>, 799 F.3d 793, 798 (7th Cir. 2015) (citing <u>Buchanan–Moore v. County of Milwaukee</u>, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. <u>Cesal</u>, 851 F.3d at 720 (citing <u>Perez v. Fenoglio</u>, 792 F.3d 768, 776 (7th Cir. 2015)).

B.    The Plaintiff's Allegations

The plaintiff sues Dr. Karl Bertram, SSM Agnesian Healthcare Corporation (d/b/a Waupun Memorial Hospital) and Wisconsin Injured Patients and Family Compensation Fund. Dkt. No. 1 at 1. He alleges that the defendants failed to provide adequate notice of, and obtain voluntary and knowing consent from him, regarding their intent to allow a student nurse anesthetist to participate in the plaintiff's medical procedure. <u>Id.</u> at ¶1. The plaintiff also states that Dr. Bertram acted with deliberate indifference to the plaintiff's serious medical needs when he allowed a student nurse to practice on the plaintiff without the plaintiff's awareness and consent. <u>Id.</u> Dr. Bertram

allegedly failed to supervise and communicate with the student during the plaintiff's surgery, resulting in near death complications. Id. The plaintiff asserts that the notice and consent forms used by Waupun Memorial Hospital (WMH) constitute a misrepresentation of its services. Id.

The plaintiff alleges that he suffered an abdominal gunshot wound in 1993 that required multiple surgeries. Id. at ¶ 2. On June 25, 2023, while incarcerated in a Wisconsin Department of Corrections (DOC) institution, he allegedly was taken to WMH due to abdominal pain and bloating. Id. The plaintiff states that he was diagnosed with a small bowel obstruction and scheduled for an exploratory laparotomy for lysis of adhesions. Id. This allegedly means that scar tissue from the plaintiff's previous surgeries had created a blockage that prevented him from being able to pass food and gas, and the doctor was going to go in through the abdomen and remove any blockage. Id. The plaintiff states that the surgery was scheduled for June 27, 2023. Id.

The plaintiff alleges that WMH has a contract with the DOC to treat incarcerated individuals. Id. at ¶ 3. Hospital employees and contracted staff, including defendant Dr. Bertram, allegedly regularly treat DOC incarcerated individuals. Id. The plaintiff alleges that incarcerated persons are transported to WMH in leg irons, handcuffs and belly chains. Id. at ¶4. He states that they do not have a choice of hospital or health care provider. Id. Upon admission to the hospital, incarcerated individuals allegedly are provided with a two-page,

single-spaced document titled "Conditions of Treatment for Hospitals" that includes the following paragraph:

> Teaching Programs: I understand that this hospital or clinic may participate in teaching programs to train future doctors, nurses, and allied health professionals and that, from time to time, residents, interns, medical students, nursing students and various health professional students may participate in my care. I understand that I may limit my participation in these teaching programs at any time by informing my doctor, nurse, or other healthcare professional that I do not want residents, interns, or students to participate in my care.

Id. at ¶5.

The plaintiff's complaint lists five "Counts" or claims. First, the plaintiff claims that WMH's representation in the two-page Conditions of Treatment for Hospitals ("Notice Form") that a medical student *may* participate in an individual's care "from time to time" is intentionally misleading and misrepresents its services, in violation of Wisconsin state law. Id. at ¶6. The plaintiff states that a student nurse anesthetist played a significant role in his surgery, yet the surgery consent form specifically stated that anesthesia would be administered "under the direction of the Department of Anesthesiology." Id. at ¶7. He asserts that this gave the appearance that there would be no student involvement or participation for him to limit. Id. The plaintiff allegedly relied on WMH's misrepresentations and, as a result, nearly died due to student involvement in his surgery. Id. at ¶10.

Second, the plaintiff claims that WMH has an unlawful policy of failing to obtain consent. He states that the notice form is deficient because it does not have an "opt-in" box to check for participation in the teaching program. Id. at

¶11. According to the plaintiff, where the patient has no choice in his medical provider, "for any consent to the use of students to be informed and valid, it would have been obtained in a non-passive way which requires the prisoner to affirmatively indicate their choice rather than couched in a form with other relevant information." Id. The plaintiff states that the notice form is inadequate considering that it is signed by the incarcerated person upon entry, before he knows what is wrong and the degree to which he will even receive any treatment at the hospital. Id. at ¶12. The plaintiff allegedly signed the notice form and the rules form simultaneously on June 25, 2023, and he did not know that he had the option of not signing the notice form or not agreeing to portions of it. Id. at ¶15. He asserts that WMH's practice of providing deficient consent forms under conditions where voluntariness was illusory foreseeably led to his injuries and near death due to over-reliance on a student healthcare provider during his surgery. Id. at ¶16.

The plaintiff brings his third count against Dr. Bertram for violation of Wis. Stat. §448.30 for failing to obtain consent. Id. at ¶17. According to the plaintiff, Dr. Bertram was statutorily required to inform the plaintiff of his intention to "1) allow an anesthesia student nurse to participate in his surgery 2) under the supervision of a CRNA (certified registered nurse anesthetist), 3) without the presence or participation of an anesthesiologist, and 4) the risks associated with using a student nurse in this capacity and a reasonable physician would have so informed the plaintiff of these critical facts." Id. at ¶18.

6

Fourth, the plaintiff claims that Dr. Bertram violated his rights under the Eighth Amendment. He says that his need for abdominal surgery was a serious medical condition. Id. at ¶20. Dr. Bertram allegedly had a surgery consent form presented to the plaintiff which said that observers may be admitted to the procedure for the purpose of advancing medical education. Id. at ¶21. The surgery consent form also said that photographs may be taken during the procedure for scientific, education or research purposes. Id. The plaintiff says that once he was unconscious, Dr. Bertram allowed a student nurse anesthetist to practice on him. Id. The plaintiff asserts that Dr. Bertram's alleged failure to advise the plaintiff that not only would a student participate in his surgery, but that he would do so under the direction of a CRNA and without the supervision of an anesthesiologist, demonstrates deliberate indifference to the plaintiff's serious medical need. Id. This allegedly deprived the plaintiff of the ability to make a conscious and knowing decision about his body, health and upcoming surgery. Id.

The plaintiff states that his surgery lasted about two hours and that in the middle of his surgery, the CRNA who was supervising and training the student left to attend another patient. Id. at ¶22. The student allegedly remained and essentially took over the administration of anesthesia medication and, if the records are accurate, the student "then became a preceptor of sorts and instructed a registered nurse to administer some of the medication[.]" Id. The plaintiff states that the procedure was successfully concluded without complication, but that when the plaintiff was taken off anesthesia and the

7

tubes were removed from his throat, a large amount of bile came out of the tube, and he could not breathe. Id. at ¶23. He allegedly was hypoxic with an elevated respiratory rate and tachycardia, requiring reintubation and transfer to the ICU with suspected chemical pneumonitis secondary to aspiration. Id. at ¶24.

The plaintiff's fifth count is another Eighth Amendment claim against Dr. Bertram. The plaintiff states that the student nurse anesthetist failed to properly intubate the plaintiff and monitor his endotracheal tube so that the bile from his stomach could be suctioned out immediately. Id. at ¶26. Dr. Bertram allegedly screamed at the student nurse about his failure to monitor the plaintiff's levels and inform him of the fact that the plaintiff had aspirated, and he ordered the student out of the room. Id. at ¶27. The plaintiff alleges that Dr. Bertram's overreliance on and failure to properly supervise and communicate with the student nurse constitutes deliberate indifference which foreseeably led to the plaintiff's nearly fatal complications. Id. at ¶28.

The plaintiff alleges that on June 28, 2023, he was transferred to University of Wisconsin–Madison Hospital for further treatment and ventilation support where he remained until July 7, 2023. Id. at ¶29. Once stable, the plaintiff allegedly was provided physical therapy and diagnosed with limited range of motion, bilateral lower extremity weakness, mobility deficits, gait deficits, balance deficits, decreased safety awareness and decreased activity tolerance. Id. at ¶32. He asserts that it was recommended that he receive ongoing outpatient physical therapy. Id.

The plaintiff alleges that despite the original surgery being successful and there being no evidence of any obstruction of the small bowel and the observation that the distal small bowel had started to fill with proximal enteric contents, the plaintiff was hospitalized again from July 17 to July 21, 2023, due to the obstruction of the bowel. Id. at ¶33. Hospital staff allegedly told the plaintiff that although the surgery had removed the blockage, he likely did not heal properly due to the post-surgery complications and the fact that he was bedridden for several days. Id. The plaintiff states that in the weeks and months following his near fatal episode at the hospital, he repeatedly has experienced and reported brain fogginess and memory deficits, migraine headaches, dizziness, mobility deficits, respiratory problems and nightmares. Id. at ¶34. For relief, the plaintiff seeks monetary damages and declaratory relief. Id. at 11.

C.    Analysis

A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when he or she acts with deliberate indifference to the serious medical need of an incarcerated individual. Cesal v. Moats, 851 F.3d 714, 720-21 (7th Cir. 2017) (citing Estelle v. Gamble, 429 U.S. 97, 104-05 (1976)). To state a claim for deliberate indifference for deficient medical care, the plaintiff "must allege an objectively serious medical condition and an official's deliberate indifference to that condition." Cesal, 851 F.3d at 721 (quoting Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

An objectively serious medical need is one that has either been diagnosed by a physician and demands treatment or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (quoting King v. Kramer, 680 F.3d 1013, 1018 (7th Cir. 2012)). The deliberate indifference standard is subjective and requires a plaintiff to allege that the official knew of, but disregarded, a substantial risk to the incarcerated individual's health. Id. (citing Farmer v. Brennan, 511 U.S. 825, 836-38 (1994); Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005)).

The plaintiff claims that Dr. Bertram violated his constitutional rights because he let a student anesthetist practice on the plaintiff once he was unconscious, so that the plaintiff couldn't refuse to consent to the treatment. The surgery allegedly was successfully concluded but when the plaintiff was taken off anesthesia and the tube was removed from his throat, bile came out of the tube, and he couldn't breathe. Dr. Bertram allegedly yelled at the student and directed him to leave the room. The plaintiff was given more care and the next day he transferred to UW–Madison Hospital, where he remained for about nine days. The plaintiff has not stated an Eighth Amendment claim against Dr. Bertram. He describes that once Dr. Bertram learned that there was a problem with the removal of the tube, the plaintiff received care and was transferred to the ICU. The plaintiff has not described any action that Dr. Bertram took that could form the basis for a plausible claim that Dr. Bertram acted with deliberate indifference regarding the medical procedure.

The court also will consider whether the plaintiff has stated a claim under the Fourteenth Amendment. Incarcerated individuals have a Fourteenth Amendment right to informed consent. Knight v. Grossman, 942 F.3d 336, 342 (7th Cir. 2019) ("The right to refuse medical treatment carries with it an implied right to the information necessary to make an informed decision about whether to refuse the treatment. Without crucial information about the risks and benefits of a procedure, the right to refuse would ring hollow."). To establish a claim for denial of informed consent, a plaintiff must prove that "(1) he was deprived of information that a reasonable patient would deem necessary to make an informed decision about his medical treatment, (2) the defendant acted with deliberate indifference to the prisoner's right to refuse treatment, and (3) if the prisoner had received the information, he would have refused the treatment." Id. at 343-44. If the plaintiff successfully establishes these three elements, the courts are to balance the right to informed consent against the relevant state interests. Id. at 344.

The plaintiff states that if he had known that a student anesthetist would be involved in his surgery, he would not have consented to it. The plaintiff has not met the first prong of a Fourteenth Amendment claim because he does not allege that he was deprived of information that a reasonable patient would have deemed necessary to make an informed decision. The plaintiff states that two days before the surgery, upon admission to the WMH, he signed the notice form which said that students may participate in his care. The notice form explicitly said that the plaintiff could limit his participation in a student

11

program "by informing [his] doctor, nurse, or other healthcare professional that [he did] not want residents, interns, or students to participate in [his] care." The plaintiff has not stated a claim for violation of his rights under the Fourteenth Amendment.

The plaintiff names as a defendant the Wisconsin Injured Patients and Family Compensation Fund (Fund). Dkt. No. 1 at 1. According to its website, the Fund provides excess medical malpractice coverage to Wisconsin health care providers and ensures that that funds are available to compensate injured patients. See oci.wi.gov/Pages/Funds/IPFCFOverview.aspx. The complaint does not contain any allegations against the fund, and the plaintiff has not stated a federal claim for relief against the fund. The plaintiff has not stated a claim for violation of his rights under federal law.

The plaintiff also brings claims under Wisconsin state law. He sues WMH for allegedly providing a deficient notice, in violation of Wisconsin state law. He says that the notice form he signed when he entered the hospital conflicts with the surgery consent form he signed before surgery because the latter form only mentioned that photographs might be taken and that students might observe the procedure, not that students might participate in the surgery. He also sues Dr. Bertram for allegedly failing to obtain his consent, in violation of state law.

A federal court may not hear cases involving only state-law claims unless the plaintiff can establish diversity jurisdiction under 28 U.S.C. §1332. Diversity jurisdiction exists when (1) the amount in controversy exceeds $75,000; and (2) the parties are citizens of different states. 28 U.S.C. §1332.

The plaintiff seeks an unspecified amount of compensatory and punitive damages. Construing his complaint liberally, the court assumes that he seeks more than $75,000. But the plaintiff alleges that all parties are citizens of Wisconsin. Because the parties are not citizens of different states, this federal court does not have subject-matter jurisdiction over any state-law claim the plaintiff may have. The court will dismiss this case without prejudice, which means the plaintiff is free to file a lawsuit in state court regarding his state law claims.

### III. Conclusion

The plaintiff's motion for leave to proceed without prepaying the filing fee is **DENIED AS MOOT**. Dkt. No. 2.

The court **ORDERS** that this case is **DISMISSED WITHOUT PREJUDICE** because the amended complaint fails to state a claim for violation of the plaintiff's rights under federal law and this court lacks subject-matter jurisdiction over any state law claim the plaintiff may have. The clerk will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. Rule of App. P. 4(a)(5)(A).). If the plaintiff appeals, he will be liable for the $605

appellate filing fee regardless of the outcome of the appeal. If the plaintiff seeks to proceed on appeal without prepaying the appellate filing fee, he must file a motion *in this court.* See Fed. R. App. P. 24(a)(1). The plaintiff may be assessed a "strike" by the Court of Appeals if it concludes that his appeal has no merit. If the plaintiff accumulates three strikes, he will not be able to file a case in federal court (except a petition for *habeas corpus* relief) without prepaying the full filing fee unless he demonstrates that he is in imminent danger of serious physical injury. Id.

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2). Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 31st day of July, 2025.

BY THE COURT:

HON. PAMELA PEPPER
Chief United States District Judge

14